**SCHMIEDT et al. v. EICHER et al.**

**SCHMIEDT et al. v. KENTUCKY TRUST CO. et al.**

Court of Appeals of Kentucky.

June 22, 1951.

Rehearing Denied Sept. 28, 1951.

Henry I. Fox, Wm. H. Crutcher, Jr., Louisville, for appellants.

Isaac Sherman and W. S. Heidenberg, Louisville, for appellees.

CULLEN, Commissioner.

Mrs. Anna S. Kimbel, a childless widow, died on July 9, 1948, at the age of 77, leaving surviving her as her heirs at law, three nieces and nephews and eleven grandnieces and grandnephews. Her estate was valued at approximately $125,000. Six months before her death, she had executed a will, bequeathing $500 to a church; $300 to the Kentucky School for the Blind; amounts ranging from $1 to $1,000 to her legal heirs; $400 each to three grandchildren, by a former marriage, of her deceased husband; $200 to a friend; corporate stock worth $7,000 to one Lewis M. Eicher; a life interest in the residue of her estate to Eicher; and the remainder interest in the residue to three charitable organizations. Eight months prior to her death she had executed a deed conveying to Eicher an apartment building valued at $12,500, reserving, however, life estate in herself.

Eicher was an illegitimate son of a deceased brother of Mrs. Kimbel. He was a man around 50 years of age.

A majority of the legal heirs of Mrs. Kimbel instituted an action to set aside the will, and a separate action to set aside the deed, on the grounds of undue influence

by Eicher, and lack of mental capacity on the part of Mrs. Kimbel. The will case was tried before a jury, a verdict was returned upholding the will, and judgment was entered in favor of the defendants. The deed case was tried before a commissioner. He returned a report upholding the deed, and judgment was entered in favor of the defendants.

The plaintiffs have appealed from both judgments, and the two cases have been consolidated on appeal.

The appellants seem to have abandoned any claim of lack of mental capacity on the part of Mrs. Kimbel, and the cases are argued only on the question of undue influence. There is not much dispute as to the facts, from the standpoint of what acts were committed and what events took place, but there is a sharp dispute as to the motives by which various acts were prompted, and as to the inferences, deductions and conclusions to be drawn from the events that took place. The briefs are addressed to the interpretation of the facts, and the question of burden of proof.

We can see no useful purpose in reviewing in detail, in this opinion, the voluminous evidence adduced on the trials. It will suffice to state the substance of the evidence on behalf of the respective parties.

On behalf of the appellants, there was evidence showing the opportunity for the exercise of undue influence; conduct on the part of Eicher that could be construed as intended and calculated to ingratiate him with Mrs. Kimbel and play upon her affections; actions by Eicher in the nature of dominant control over Mrs. Kimbel's person and her affairs, letters from Mrs. Kimbel to Eicher containing affectionate terminology from which childishness and senility might be inferred; and evidence that Mrs. Kimbel, at the time of the execution of the deed and the will, and for several months prior thereto, had been given drugs to relieve severe pain she was suffering as a result of an automobile accident in which she had been injured. Of course the appellants' case is built around the fact that Eicher, having known Mrs. Kimbel for only a little more than a year, was given a substantial share of her property, while her legitimate heirs were given only small bequests. The appellants contend that Mrs. Kimbel made an unnatural disposition of her estate, and they seek to establish the conclusion, from the evidence, that the disposition was the result of a clever, carefully planned campaign by Eicher to secure Mrs. Kimbel's property to the exclusion of the natural objects of her bounty.

On behalf of the appellees, there was considerable testimony by disinterested witnesses that Mrs. Kimbel, up to the time of her death, was alert and intelligent, and that that her mind was strong and active; that she was a strong-willed person and not easily influenced; that she carried on her business affairs during the months immediately preceding her death, in an intelligent and business-like way, these affairs including negotiations with tenants, a painter and a building contractor; that she was not under the influence of drugs and that the drugs she was receiving were not such as would affect her mentality. There was evidence that Mrs. Kimbel was a lonely woman, longing for affection; that while a few of her nieces and nephews showed her some attention, it was attention of the character that hopeful heirs might be expected to show to a wealthy aunt; that Mrs. Kimbel was disgusted with some of her nieces and nephews because they had several times asked her for money or property; that she felt that her brother had wronged Eicher by not recognizing him as his son; that for almost a year she urged and implored Eicher to leave his job in Chicago and come to Louisville to manage her affairs, before he finally agreed to do so; and that the care and attention Eicher gave to Mrs. Kimbel after he came to Louisville, and the control he assumed over her affairs, were the services that Mrs. Kimbel wanted him to perform when she asked him to come to Louisville.

There is some significance in the fact that the deed was recorded immediately after it was executed, and that there was no effort on the part of Eicher to conceal the execution of the deed and the will. In fact, there was evidence that some of the nieces and nephews, after learning about the deed, expressed the opinion that Eicher

was entitled to the property conveyed by the deed.

It also is significant that in a will executed in January 1947, before the alleged scheme of Eicher had a chance to mature, Mrs. Kimbel bequeathed to Eicher corporate stock worth around $16,000, and the bequests to her legal heirs were no larger, and in some instances were smaller, than in the will now complained of. In the 1947 will, Mrs. Kimbel left the residue of her estate to charity, and the only substantial difference between the 1947 will and the will complained of is that in the latter will Mrs. Kimbel gave Eicher a life interest in the residue of her estate.

The claim of the nieces and nephews that Eicher through the exercise of undue influence, deprived them of their rightful shares in Mrs. Kimbel's estate, cannot be given much weight in the light of the evidence that Mrs. Kimbel at no time intended to leave her property to the nieces and nephews.

We are of the opinion that the evidence on behalf of the appellees was sufficient to meet any burden of proof that fell upon them, and was sufficient to support the verdict in the will case and the finding of the chancellor in the deed case.

The judgments in both cases are affirmed.